IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-00221

| | |
|---|---|
| WENDY MCKINNEY,<br><br>    Plaintiff,<br><br> v.<br><br>CLEVELAND COUNTY<br>SCHOOLS/BOARD OF EDUCATION,<br>CLEVELAND COUNTY NORTH<br>CAROLINA,<br><br>MARK PATRICK (individually and in his<br>official capacity as principal of North<br>Shelby School),<br><br>STEPHEN FISHER (in his official<br>capacity as Cleveland County Schools'<br>Superintendent),<br><br>JENNIFER WAMPLER, (individually and<br>in her official capacity as Assistant<br>Superintendent of Operational and Human<br>Services, and Executive Director of<br>Human Resources for the Cleveland<br>County Schools),<br><br>    Defendants. | **MEMORANDUM OF LAW IN<br>SUPPORT OF MOTION TO DISMISS** |

   The Cleveland County Board of Education and individual defendants Dr. Stephen Fisher,

in his official capacity, and Ms. Jennifer Wampler, in her official and personal capacity, by and

through their attorneys, submit this Memorandum of Law in Support of their Motion to Dismiss

the Amended Complaint. For the following reasons, the Board respectfully requests that its Motion

1

to Dismiss the Amended Complaint be granted pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the Plaintiff's claims be dismissed with prejudice.

## **INTRODUCTION**

Plaintiff Wendy McKinney ("Planitff" or "Ms. McKinney") was a bookkeeper employed by the Cleveland County Board of education (the "Board"). The Board terminated Ms. McKinney in December 2018 for excessive absences. In the previous year and half, McKinney missed at least 143 full days and 60 partial days of work. By November 14, 2018, she had long exhausted her legally entitled leave and was near the end of a 12-week period of courtesy leave which the school system administration had granted to Ms. McKinney even though not required by law or policy. Instead of returning to work at the end of this 12-week period, Ms. McKinney informed the Board that she needed an additional four-to-six weeks of leave until January 2, 2019. The Board, faced with an employee who had already missed significant time from work and was seeking to miss more, applied its "excessive absences" policy and terminated Ms. McKinney. Ms. McKinney brought this ten-count Amended Complaint challenging this decision. (hereinafter, the "Amended Complaint" or "Compl."). The Amended Complaint should be dismissed in its entirety.

As detailed in the Notice of Removal, Plaintiff filed suit in Gaston County Superior Court on March 17, 2020. All Defendants removed the case to Federal court with the consent of Plaintiff. Plaintiff's Amended Complaint brings ten "causes of actions" (hereinafter, "Counts") under state and Federal law alleging: (1) wrongful discharge against the Board, (2) intentional infliction of emotional distress ("IIED") against the Board and Mark Patrick in his official and individual capacities, (3) negligent infliction of emotional distress against the Board and Mr. Patrick in his official and individual capacities, (4) violations of the North Carolina Wage and Hour Act against the Board, (5) unlawful retaliation under three North Carolina statutes against the Board, (6)

pregnancy discrimination and hostile work environment claims against the Board under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, ("Title VII"), (7) discrimination and failure to provide reasonable accommodations claims against the Board under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, (8) claims against the Board under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.,* (9) various Federal statutory and Constitutional claims against all Defendants under 42 U.S.C. § 1983, and (10) punitive damages for any claim that authorizes such damages against all Defendants. On April 16, 2020, all Defendants timely filed a motion for extension of time to answer or otherwise respond to the Complaint, which was granted by the Court. The Board, along with Defendants Stephen Fisher (in his official capacity) and Jennifer Wampler (in her official and personal capacities), now timely file the instant Motion to Dismiss the Amended Complaint and accompanying memorandum of law in support of their Motion pursuant to Local Rule 7.1.

### FACTUAL ALLEGATIONS

Ms. McKinney was employed by the Cleveland County Board of Education (the "Board") as a full-time employee in various roles beginning in January 2003. In 2015, she began working as a bookkeeper for North Shelby High School. (Compl. at ¶¶ 1,12.) She was employed by the Board in this capacity until her termination on December 14, 2018. (Compl. at ¶ 45.)

A. Ms. McKinney's allegations about her job.

Ms. McKinney's allegations regarding her work environment began when Defendant Mark Patrick started as principal of North Shelby High School in August of 2017, the beginning of the 2017-18 school year. (Compl. at ¶¶ 14, 15.) Ms. McKinney had recently returned to the school after "gastric sleeve" surgery and began to have "matters of conflict" with Mr. Patrick. (Compl. at ¶ 14, 15.) For example, Mr. Patrick allegedly made remarks that made Ms. McKinney

3

"uncomfortable" including saying (1) regarding seat belts on children, "you must make sure it goes directly across the nipples;" (2) that his "underwear was 'up his ass'"; and (3) that "I have to go pee" while walking through Ms. McKinney's office. (Compl. at ¶ 15.) Ms. McKinney allegedly reported these remarks to Dr. Fisher, the superintendent of Cleveland County Schools. (Compl. at ¶ 15.) Ms. McKinney also states concerns with Mr. Patrick including what she perceived as his apparent disregard for bookkeeping practices and policies and perceived favoritism. (Compl. at ¶¶ 16, 18, 19.)

Ms. McKinney also alleges Mr. Patrick engaged in "disparate, rude, and condescending treatment" of her leave requests including "requir[ing] [Ms.] McKinney to prepare an unofficial spreadsheet of her absences," delaying her requests, and sending a rude text message in response to one such request. (Compl. at ¶¶ 20, 21.) McKinney further alleges that Mr. Patrick instructed her "to clock out before driving to a mandatory meeting" and "to take school's banking deposits on her own time, after clocking out of work, on her way home." (Compl. at ¶ 22.)

Ms. McKinney states that she first reported the above conduct and other concerns to Ms. Wampler, Executive Director of Human Resources, beginning in November 2017. She claims she made additional reports to Ms. Wampler in a meeting on February 26, 2018. (Compl. at ¶ 25.) At the end of the 2017-18 school year, Ms. McKinney received a "negative [performance] evaluation." (Compl. at ¶ 34.) One of the areas on which she needed "improvement," according to the evaluation, was her "attendance." (Compl. at ¶ 34.)

B. Ms. McKinney's absences from work.

Ms. McKinney's performance evaluation, dated July 19, 2018, placed Ms. McKinney on "conditional" evaluation with an overall rating of "Need Improvement." (Exhibits to the Amended

4

Complaint, (Hereinafter, "Exhibits") at pgs. 19-22 (Evaluation).)[1] Ms. McKinney had various personal issues during the 2017-18 school year for which she took leave or was otherwise absent from work. For example, in February of 2018, Ms. McKinney utilized leave under the Family Medical Leave Act (the "FMLA") to take care of her sick mother. (Compl. at ¶ 20.) The next month, Ms. McKinney missed additional time because of "severe arm pain." (Compl. at ¶ 27.) Ms. McKinney learned she was pregnant in April and by May a doctor had "written [Ms.] McKinney out of work." (Compl. at ¶ 29.) On May 21, 2018, Ms. McKinney applied for FMLA leave for her pregnancy and "[h]er FMLA request was granted." (Compl. at ¶ 31.) Ms. McKinney exhausted her FMLA leave on July 2, 2018. (Exhibit at pg. 24 (McKinney Letter).) In total, Ms. McKinney missed 38.3 workdays *not covered by the above FMLA requests* during the 2017-18 school year according to her July performance evaluation. (Exhibits at pg. 22.) These non-FMLA absences, according to the evaluation, "resulted in office duties and management lacking efficiency and effectiveness" and "required other staff members to cover her duties, which [ ] impacted the daily operation of the school." (Exhibits at pg. 22.)

Ms. McKinney asked Ms. Wampler about taking additional leave in September 2018. (Compl. at ¶ 38.) Ms. Wampler explained to Ms. McKinney that she was not eligible for additional FMLA leave at that time because she had not worked 1,250 hours in the 12 months prior to her request. (Compl. at ¶ 38; Exhibit at pg. 24(McKinney Letter); Exhibit at pgs. 29-30 (FMLA Form).) Nevertheless, as a courtesy, Ms. Wampler granted Ms. McKinney approximately 12 additional weeks of unpaid leave. (Compl. at ¶38, Exhibits at pg. 24.) When this leave was close to expiring, in November, Ms. McKinney requested that Ms. Wampler extend her courtesy leave

---

[1] Plaintiff attached a number of exhibits to her Amended Complaint, which may be considered by the Court when ruling on a Motion to Dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing Fed. R. Civ. Proc. 10(c)).

5

for an additional four to six weeks. (Compl. at ¶ 40.) Ms. Wampler "stated she could not approve that" request and warned Ms. McKinney that she could be subject to dismissal due to the Board's "excessive absence policy." (Compl at ¶¶ 38, 40.)

Ms. McKinney nevertheless made a request by letter to the Board on November 15 to extend her courtesy leave to January 2, 2019, past her scheduled November 16 delivery date and back surgery on December 14. (Compl. 41; Exhibits at pg. 25.) By the time of her request, Ms. McKinney had missed 74 full days and 45 partial days of work in the 2017-18 school year, and 69 full days and 15 partial days in the 2018-19 school year (which was less than halfway over). (Exhibits at pg. 24.)

### C. Ms. McKinney's Termination

On November 20, 2018, Ms. Wampler wrote a memorandum to the Board enclosing Ms. McKinney's leave request. (Compl. at ¶ 42; Exhibits at pg. 24 (Wampler Memo).) The memorandum provided the Board with background about Ms. McKinney's leave request including Ms. McKinney's history of excessive absences. (Exhibits at pg. 24 (Wampler Memo).) Ms. Wampler explained that Ms. McKinney's leave request was "not covered under [the] FMLA." (Exhibit at pg. 24 (Wampler Memo).) She also noted that "[t]o my knowledge, the only leave requests that have been submitted and approved by the board in the past, were requested for full, academic years, and the employees were in good standing." (Compl. at ¶ 42; Exhibits at pg. 24 (Wampler Memo).) The Board rejected Ms. McKinney's request in closed session on November 26 and then voted to terminate Ms. McKinney on December 14. (Compl. at ¶¶ 43, 45.)

Dr. Fisher informed Ms. McKinney of the Board decision via a December 14 letter. (Exhibits at pgs. 16-17 (Fisher Letter).) Dr. Fisher explains that Ms. McKinney had been placed on a conditional evaluation due to concerns about her performance and attendance before her last

leave request. (Exhibits at pg. 16 (Fisher Letter).) He also notes that even though Ms. McKinney had exhausted all legally entitled leave in September, Cleveland County Schools granted Ms. McKinney an additional 12-weeks of leave. (*Id.*) Faced with another leave request, the Board applied its "excessive absences" policy to reject Ms. McKinney's final leave request and terminate her employment. (Compl. at ¶ 46; Exhibits at pgs. 16, 24.) The Board's "excessive absences" policy states in relevant parts (1) "[a]dditional absences beyond the employee's legal leave may be granted if such an allowance is determined to be in the best interest of the school system" and (2) "[a]bsences in excess of the entitled legal leave may result in dismissal from service." (Exhibit at pg. 32.)

Ms. McKinney recites three alleged instances of the Board approving extensions of leave. First, "a male principal was given an extension because his wife was having a difficult pregnancy." Second, "a transportation employee was given leave shortly after being hired." Third, an employee "was given an extension to start a new business." (Compl. at ¶ 48.) Ms. McKinney also alleges "[s]everal other employees were granted leave for medical reasons." (Compl. at ¶ 48.) On March 21, 2018 Ms. McKinney filed a charge with the Equal Employment Opportunity Commission ("EEPC") related to her termination. The full charge and Ms. McKinney's subsequent letter to the EEOC are attached to the Amended Complaint as an Exhibit. (Compl. at ¶ 51; Exhibits at pgs. 3-4, 34-40.) The EEOC issued a "determination letter" on September 5, 2019 that "invite[d] the parties to join with it in reaching a resolution to this matter." (Exhibit at pgs. 42-43.) The parties could not reach a resolution, however, and Plaintiff brought this suit.

**STANDARD OF REVIEW**

## I.     STANDARD FOR RULE 12(B)(6) MOTION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, viewing the complaint in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a plaintiff has "the burden . . . to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Id.* at 765 (emphasis in original).

## II.     STANDARD FOR RULE 12(B)(1) MOTION

"'The existence of subject matter jurisdiction is a threshold issue' which must be addressed before the merits of the case." *Jones v. American Postal Workers Union,* 192 F.3d 417, 422 (4th Cir.1999)). In a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936). A defendant may challenge subject matter jurisdiction by contending that (1) a complaint fails to allege facts upon which subject matter jurisdiction can be based, or (2) that, although a complaint alleges sufficient facts to invoke subject matter jurisdiction, those facts are not themselves true. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).

8

**ARGUMENT**

## I. OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS JENNIFER WAMPLER AND STEPHEN FISHER ARE DUPLICATIVE OF CLAIMS AGAINST THE BOARD AND SHOULD BE DISMISSED.

Plaintiff's official capacity claims against Defendants Jennifer Wampler and Stephen Fisher should be dismissed as redundant of Plaintiff's claims against the Board, because "[s]uing a governmental employee in his 'official' capacity is simply another way of pleading an action against the governmental entity." *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 399 (M.D.N.C. 2004) (dismissing official capacity claims against individual defendants where the governmental entity was also sued); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Huggins v. Prince George's Cnty., Md.*, 683 F.3d 525, 532 (4th Cir. 2012). Here, Plaintiff has alleged identical claims against the Board and the Individual School Defendants in their official capacities.

For the reasons set forth below, Plaintiff's claims against the Board should be dismissed for lack of jurisdiction and failure to state claim. However, even if any of Plaintiff's claims are allowed to proceed against the Board, the identical official capacity claims against Individual School Defendants should be dismissed as redundant of Plaintiff's claims against the Board. Accordingly, this Memo will proceed by referring to the defendants Jennifer Wampler and Stephen Fisher, in their officially capacity, and the Board, collectively as the "Board" and any defense asserted on behalf of the Board should be understood as being asserted on behalf of individuals in their official capacities.

9

## II. PLAINTIFF'S DISCRIMINATION CLAIMS UNDER TITLE VII, THE ADA AND STATE LAW IN COUNTS 1, 6 AND 7 MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Ms. McKinney's discrimination claims under Title VII, the ADA, and state law should be dismissed under Rule 12(b)(6) because her conclusory allegations of discrimination are insufficient to survive a motion to dismiss and the Amended Complaint and accompanying exhibits themselves demonstrate that Ms. McKinney was not discriminated against. The Board did not violate Title VII, the ADA, or state law when it dismissed Ms. McKinney. Instead, Ms. McKinney was dismissed because she was excessively absent and had exhausted all legally entitled leave months before her dismissal. Plaintiff's discrimination claims in Counts 1, 6, and 7 fail to state a claim and should be dismissed. *See McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 583, 588 (4th Cir. 2015).

### A. Plaintiff Cannot State a Discrimination Claim under Title VII Because She Was Not Discriminated Against Because of her Pregnancy.

Plaintiff brings a claim in Count 6 (Compl. at ¶¶ 30-34, pgs. 30-31) under the Pregnancy Discrimination Act of Title VII, which treats discrimination on the basis of "pregnancy, childbirth or related medical conditions" the same as sex-based discrimination. *See* 42 U.S.C. § 2000e-2(a). The elements of a pregnancy discrimination claim are (1) a known pregnancy; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated non-pregnant employees. *Randa v. Whitaker,* 2019 WL 79357, at *4 (E.D.N.C. Jan. 2, 2019) (citing *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).)[2] To survive a motion to dismiss under Rule 12(b)(6), a Title VII plaintiff must allege facts that plausibly overcome an "obvious alternate explanation" for the employer's action other than "invidious

_____

[2] Plaintiff has not alleged any direct evidence of pregnancy discrimination.

discrimination." *McCleary–Evans*, 780 F.3d at 588 (emphasis omitted). Here, Plaintiff's Amended Complaint and accompanying exhibits show that Ms. McKinney had unsatisfactory job performance based on her excessive absences, and Ms. McKinney has not alleged that any non-pregnant employees were treated differently.

*Plaintiff had unsatisfactory job performance.* Ms. McKinney's had a negative evaluation in the summer of 2018 for, among other reasons, excessive absences. (Compl. at ¶ 34; Exhibits at pg. 22 (Evaluation).) The evaluation noted that at that time Ms. McKinney had been absent for 38.3 work days *excluding* FMLA leave. (Compl. at ¶¶ 20, 31; Exhibits at pg. 22 (Evaluation).) Ms. McKinney continued to miss workdays after the evaluation including exhausting her FMLA leave by July 2. (Exhibits at pg. 23. (Wampler Memo); *see generally* Compl. at ¶ 38.) After exhausting her FMLA leave, the Board, through Ms. Wampler, granted Ms. McKinney 12 additional weeks of unpaid leave in September as a courtesy. (Compl. at ¶ 38; Exhibit at pg. 24 (Wampler Memo).) Ms. McKinney used all of this leave, missing work until November 15, when Ms. McKinney petitioned the Board for *additional* leave until January 2. (Compl. at ¶ 40; Exhibits at pg. 25 (McKinney's Letter).) In all, Ms. McKinney (as of November 15) missed 74 full days and 45 partial days in the 2017-18 school year and 69 full days and 15 partial days in the 2018-19 school year. (Exhibits at pg. 24 (Wampler Memo).) In short, Ms. McKinney did not have "satisfactory job performance;" in fact, she was largely an absent employee when the Board was considering her request for even more leave in November. *See Randa*, 2019 WL 79357, at *5 (finding no discrimination when employee had unsatisfactory job performance review based on conduct before her pregnancy).

*Plaintiff lacks allegations of sufficient comparators.* "The similarity between comparators ... must be clearly established in order to be meaningful." *Lightner v. City of*

*Wilmington,* 545 F.3d 260, 265 (4th Cir. 2008). In order for Ms. McKinney's pregnancy discrimination claim to be cognizable, she must allege that similarly-situated non-pregnant employees were treated differently. *See id*; *Randa*, 2019 WL 79357, at *4-5. In light of Ms. McKinney's November 15 request, the Board only had two options: (1) grant Ms. McKinney yet another weeks-long period of additional leave to which she was not entitled or (2) deny her request and terminate her employment based on Ms. McKinney's inability to report to work. The Board's "excessive absences" policy allowed dismissal of employees who were "in excess of [their] entitled legal leave." (Exhibits at pg. 27 (Policy).) And, Ms. Wampler was unaware of the Board granting additional leave to any employees who were not in "good standing." (Compl. at ¶ 42.) Accordingly, in light of Ms. McKinney's most recent negative job performance review and her continued absences, the Board dismissed her. (Compl. at ¶ 46; Exhibit at pgs. 16-17 (Fisher Letter).)

Plaintiff attempts to provide comparators of (presumably) non-pregnant employees who were instead granted leave. She cites a male principal given leave to care for his pregnant wife, another employee given leave shortly after being hired, and a third employee given leave to start a new business, as well as "[s]everal other employees" granted leave for medical reasons. (Compl. at ¶ 48.) The Amended Complaint does not, however, allege that any of these employees had a negative job performance review like Ms. McKinney or that any of these employees had missed over 200 full or partial days of work over the previous year and a half of their employment. Ms. Wampler's statement remains uncontroverted by the allegations: employees were not granted additional leave if they were "not in good standing." Because Ms. McKinney fails to allege any comparators (pregnant or non-pregnant) who were similarly-situated in terms of their job performance, her Title VII discrimination claim must be dismissed under Rule 12(b)(6). *See*

*Randa*, 2019 WL 79357, at \*4-5 (dismissing pregnancy discrimination claim under Title VII in part because plaintiff did not allege comparators with "negative performance reviews…of comparable severity"); *see also, Harrison v. Se. Radiology, P.A*., 2013 WL 633584, at \*5 (M.D.N.C. Feb. 20, 2013) ("Plaintiff's complaint, even liberally construed, does not state a claim for disparate treatment under Title VII. Plaintiff has not pled any facts to satisfy the fourth element of a claim. Plaintiff has not alleged that she was treated differently from similarly situated individuals outside her protected class."); *Curry v. Philip Morris USA, Inc.,* 2010 WL 431692, at \*4 (W.D.N.C. Feb. 4, 2010) (dismissing a pro se plaintiff's Title VII claim in part for failure to allege more favorable treatment of a similarly situated employee).

*Excessive absences are the "obvious alternate explanation" for Ms. McKinney's dismissal.* Taken together, Plaintiff's unsatisfactory job performance and the absence of allegations that the Board treated similarly situation non-pregnant employees differently supports the "obvious alternative explanation" for her dismissal: her excessive absences. *McCleary–Evans.*, 780 F.3d at 583. "[E]mployers are not required to give pregnant women special treatment" in leave policies but rather they are required to treat pregnant employees "the same as all other employees." *Maldonado v. U.S. Bank*, 186 F.3d 759, 762 -763 (7th Cir. 1999); *see also*, *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 861 (5th Cir. 2002) (holding that Title VII "does not require preferential treatment of pregnant employees and does not require employers to treat pregnancy related absences more leniently than other absences"). Accordingly, when a pregnant employee such as Ms. McKinney is fired for excessive absences, she must allege facts to support an inference that she was fired for a reason "other than her poor attendance" and allege she was "treated differently from similarly situated non-pregnant employees who missed a comparable amount of work*." Armindo v. Padlocker, Inc*., 209 F.3d 1319, 1321 (11th Cit. 2000). As demonstrated above,

13

Ms. McKinney has failed to do so. She was dismissed for the non-discriminatory reason of being excessively absent, which was the root of her unsatisfactory job performance. Ms. McKinney has not alleged that the Board has ever treated a non-pregnant employee who similarly had a negative performance review or history of excessive absences any differently. Plaintiff fails to state a discrimination claim under Title VII in Count 6 (compl. ¶¶ at 30-34, pgs. 30-31), and this claim must be dismissed under Rule 12(b)(6).

B. Plaintiff Cannot State a Discrimination Claim under the ADA Because She Was Not Discriminated Against Because of a Disability.

Plaintiff's discrimination claims under the ADA in Count 7 (Compl. ¶¶ 55-59, pgs. 35-36) also fail for the same reasons as above. "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Assuming *arguendo* Ms. McKinney's pregnancy-related complications amount to a disability,[3] as explained *supra* Section II.A., Ms. McKinney was not dismissed due to any disability but for the "obvious alternate explanation" that she did not report to work and perform her job duties for an extended period in excess of all legally entitled leave. *See McCleary–Evans,* 780 F.3d at 583. Additionally, Ms. McKinney is not a qualified individual under the ADA. The Fourth Circuit has held, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the

---

[3] The Board reserves its right to argue that it is without sufficient information to establish that Ms. McKinney is a person with a disability.

ADA." *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994). The reason is simple: an employee who "does not come to work cannot perform *any* of his job functions, essential or otherwise." *Id.*(internal quotations omitted.)[4]

Here, Ms. McKinney, as detailed *supra* II.A., was excessively absent even before her pregnancy. Ms. McKinney is not "qualified" under the ADA because she could not "come to work" and "perform her essential job functions." *See, e.g., Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir. 1994) (holding that "coming to work regularly" is an "essential function"); *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va.1991) (holding that "reasonably regular and predictable attendance is necessary for many [jobs]"), *aff'd*, 956 F.2d 1163 (4th Cir.1992); *Santiago v. Temple Univ.*, 739 F.Supp. 974, 979 (E.D.Pa.1990) ("attendance is necessarily the fundamental prerequisite to job qualification").

C. <u>Plaintiff Cannot State a Wrongful Discharge Claim Because She Was Not Discriminated Against and Because the Court Lacks Subject Matter Jurisdiction Over the Claim.</u>

Plaintiff also brings a wrongful discharge claim under North Carolina common law in Count 1 because the Board "discriminated" on the basis of Plaintiff's sex and disability (pregnancy) by terminating her and this purported discrimination violated North Carolina public policy. (Compl. at ¶¶ 1-9, pgs. 22-24.) North Carolina is an at-will employment state and generally terminations are not actionable. The state provides a limited common-law exception for a discharge that violates a state statute or policy. *Ridenhour v. IBM Corp.,* 132 N.C. App. 563, 568, 512 S.E. 2d. 774 (1999). Count 1, however, fails to state a cognizable wrongful discharge claim

---

[4] The Fourth Circuit qualifies this statement by stating that physical attendance is required for ADA protection "except in unusual case where an employee can effectively perform all work-related duties at home." *Id.* The Amended Complaint makes no allegation that this exception is applicable to Ms. McKinney's job or that was something Ms. McKinney was willing to do.

15

because the basis of Plaintiff's wrongful discharge claim is the same as her Title VII and ADA discrimination claims discussed above. The North Carolina Supreme Court has held that the evidentiary standards used in Title VII cases are also applicable in wrongful discharge cases. *See N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 141 (1983). As a result, Plaintiff's wrongful discharge claim in Count 1 fails for the same reasons her Title VII and ADA discrimination claims fail. Furthermore, Plaintiff's relief in a wrongful discharge claim is the loss of "wages" and other work-related benefits. As discussed *infra* Section VIII, the Board retains governmental immunity over common law tort claims, including wrongful discharge.

## III. PLAINTIFF'S STATE LAW RETALIATION CLAIMS IN COUNT 5 SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Count 5 lists three different statutes under which Plaintiff attempts to bring retaliation claims. (Compl. at ¶¶ 1-5, 25-29, pgs. 27-30.) For the reasons stated below, Plaintiff cannot bring a claim under any of the cited statutes and Count 5 should be dismissed under Rule 12(b)(1).[5]

*First*, N.C.G.S. §115C-335.5 does not provide a private right of action. (Compl. at ¶¶ 2, 26, pgs. 27, 29.) North Carolina case law "holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (internal quotation marks omitted). No such right of action is present in NCGS §115C-335.5, thus, this Court does not have subject matter jurisdiction to hear a claim under that statute.

---

[5] The Board also asserts that any "retaliation" claims, even if brought under a proper cause of action, are misplaced here because of there was no causal connection between Ms. McKinney's February 2018 "report" of Mr. Patrick's alleged misbehavior (none of which could be characterized as "sexual harassment" for the purposes of N.C.G.S. §115C-335.5) and the Board's December 2018 decision to terminate Ms. McKinney for violating the excessive absences policy. (Compl. at ¶¶ 24-26.)

16

*Second*, N.C.G.S. § 168A-10 is a provision under the North Carolina Persons with Disabilities Protection Act ("NCPDPA"). (Compl. at ¶¶ 3, 27 pgs. 27-29). There is no jurisdiction over a claim under the NCPDPA when, as here, a plaintiff also begins Federal proceedings under the ADA. *See* N.C.G.S. § 168A-11(c) ("No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under… the Americans with Disabilities Act of 1990 . . . involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter."); *see also Bowling v. Margaret R. Pardee Mem'l Hosp.*, 179 N.C. App. 815, 820–21, 635 S.E. 2d. 624, 629 (2006) ("The clear meaning of the language of N.C. Gen. Stat. § 168A–11(c) does not allow a plaintiff to file simultaneous federal and state claims, then see which one has a better chance of being successful."). To the extent Plaintiff's claims of unlawful retaliation here are slightly different than the claims in Counts 6 and 7 of the Amended Complaint, Plaintiff is also time-barred from bringing this claim under the NCPDPA because she was terminated on December 14, 2018—more than 180 days from the date the original Complaint was filed in state court on March 17, 2020. *See* N.C.G.S. §168A-12 (providing for a 180-days statute of limitations for any employment discrimination claim under the NCPDPA); *Shea v. Vill. Green Care Ctr., Ltd.*, 1998 WL 960307, at *2 (E.D.N.C. Aug. 31, 1998) (applying this statute of limitation to dismiss retaliation claim).

*Third*, N.C.G.S. § 126-85 (compl. at ¶¶ 4, 28, pgs. 28-30) does not apply to Ms. McKinney because public school employees are not covered by the state Human Resources Act. N.C.G.S. §126-5(c2) ("The provisions of this Chapter shall not apply to. . . public school employees.") Thus, this Court does not have subject matter jurisdiction over a claim pursuant to the Human Resources Act brought by Ms. McKinney. Further, a claim pursuant to the Human Resources Act has a one-year statute of limitations. N.C.G.S. § 126-86. Plaintiff's claims under the statute are therefore

17

time-barred since her December 14, 2018, dismissal occurred more than a year before this suit was filed on March 17, 2020.  *See* N.C.G.S. § 126-86.

## IV. PLAINTIFF'S REASONABLE ACCOMMODATION CLAIM UNDER THE ADA IN COUNT 7 SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's reasonable accommodation claim under the ADA in Count 7 (compl at ¶¶ 51-54, pg. 34) should also be dismissed because Ms. McKinney does not identify a rejected "reasonable accommodation" that would have enabled her "to perform all the essential functions of her position." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015); *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 345 (4th Cir.2013). The only purported "reasonable accommodation" the Board rejected was Ms. McKinney's final request for additional leave. For a leave request to be considered a "reasonable accommodation" under the ADA, such a request must "(1) [be] for a limited, finite period of time; (2) consist[ ] of accrued paid leave or unpaid leave: and (3) [ ] [be] shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Wilson,* 717 F.3d at n.7 (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 at 465–66 (4th Cir. 2012); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).)

Ms. McKinney's request must be viewed in the context of the many preceding leave requests she made.  Where, as here, plaintiff's "initial leave requests that the school granted merely resulted in an increasing number of additional leave requests," the accommodation cannot be thought to be for a "limited, finite period of time" or "likely to achieve a level of success" to allow Ms. McKinney to perform all the essential functions of her job. *See Brady v. Bd. of Educ. of Prince George's Cty*., 222 F. Supp. 3d 459, 471 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018) ("Here, the initial leave requests that the school granted merely resulted in an increasing number

18

of additional leave requests, with Brady's use of five and a half sick days in the spring of 2013 increasing to missing entire weeks of work in the 2014–15 school year. Thus, as in *Wilson*, '[Plaintiff] has not identified a possible reasonable accommodation, other than leave, that would have enabled [her] to perform the essential functions of [her] position: nor has [Plaintiff] produced evidence that had [she] been granted such leave, [she] could have performed the essential functions of [her] position on [her] requested return date.'") *Myers*, 50 F.3d at 283 ("Reasonable accommodation does not require [an employer] to wait indefinitely for [an employee's] medical conditions to be corrected"). Plaintiff's accommodation claim under the ADA in Count 7 (compl. ¶¶ 51-54, pg. 34) should be dismissed under Rule 12(b)(6).

## V. PLAINTIFF'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM IN COUNT 6 SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's Count 6 alleges that she was subject to a hostile work environment due to her sex in violation of Title VII. (Compl. ¶¶ at 35-47, pgs. 31-33.) This claim should be dismissed under Rule 12(b)(6) because Plaintiff failed to exhaust administrative remedies by including this claim in the charge she submitted to the Equal Employment Opportunity Commission ("EEOC"). Further, even if Plaintiff's claim was properly exhausted, the Amended Complaint's allegations do not support a viable hostile work environment claim.

### A. Plaintiff Failed to Exhaust her Hostile Work Environment Claim.

Plaintiff brings novel hostile work environmental claims under Title VII that were never a part of her original EEOC charge, which is attached in the exhibit to her pleading at pages 3-4. All claims under Title VII must be first brought to the EEOC before a plaintiff can maintain such a claim in a Court. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1852 (2019) (claim filing requirement in Title VII is "mandatory"). The charge must be "sufficiently precise to identify the

19

parties, and to describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b), such that a claimant's "employer is put on notice of the alleged violations," *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

The Fourth Circuit has repeatedly held that when Title VII claims in a "court complaint are broader than the allegation of a discrete act or acts in [the] administrative charge, they are procedurally barred." *Parker v. Reema Consulting Servs.*, Inc., 915 F.3d 297, 306 (4th Cir. 2019) (internal quotations omitted); *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) ("Our cases have made clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). As the Supreme Court recently reiterated in *Fort Bend*, a proper administrative charge is a "mandatory part" of any Title VII claim, and a claim missing a proper charge must be dismissed for a failure to state a claim under Rule 12(b)(6).[6] 139 S. Ct. at 1852; *Chacko.*, 429 F.3d at 513 (4th Cir. 2005) ("We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit") (collecting cases).

Plaintiff's EEOC charge alleges pregnancy discrimination under Title VII and discrimination under the ADA, as well as a "reasonable accommodation" claim under the ADA, as follows:

"I believe I have been discriminated against and denied a reasonable accommodation in violation of the Americans with Disabilities Act of 1990, as amended. I also believe I have been discriminated against due to my pregnancy in violation of Title VII of the Civil Rights Act of 1964." (Exhibit at pg. 3).

---

[6] Before last year's decision in *Fort Bend*, the Fourth Circuit previously dismissed actions for failure to exhaust on jurisdictional grounds but this motion seeks relief under 12(b)(6). *Fort Bend,* however, recently decided that the claim processing requirement for Title VII claims was not "jurisdictional" but simply a "mandatory" requirement. That distinction, however, is meaningless for the purposes of this motion since Plaintiff has attached her EEOC charge to the Complaint and, as a result, there is no need for extrinsic evidence.

Plaintiff cannot rely on this charge alleging pregnancy discrimination to fulfill the claim filing requirement for her hostile work environment claim. For example, the Fourth Circuit in *Evans* disallowed a Title VII claim of sexual harassment because that Plaintiff's EEOC charge only alleged sex discrimination in denying her job promotion. *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996). In doing so, the Court rejected the argument that "all of the discriminatory events and incidents surrounding [Plaintiff's] employment are closely interrelated." *Id*; *see also Lawson v. Burlington Indus.,* 683 F.2d 862, 863–64 (4th Cir.) (affirming lower court's dismissal because charge of illegal layoff does not encompass allegations of illegal failure to rehire); *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir.1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination); *Chacko,* 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits").

Not only is Plaintiff alleging an entirely new type of Title VII claim, the factual allegations supporting Plaintiff's hostile work environment claim were not included in her EEOC charge. Ms. McKinney alleges in the Amended Complaint that her supervisor, Mr. Patrick, made off-color remarks "that made Ms. McKinney very uncomfortable" including (1) the proper application of a seatbelt goes "directly across the nipples," (2) that his "underwear was 'up his ass,'" and (3) that he had "to go pee." (Compl. at ¶15) Ms. McKinney also claims she was subject to constant "disparate, rude, and condescending treatment" from Mr. Patrick including by requiring her to (1) clock out before she left work for the day despite her stopping by the bank and (2) prepare "an unofficial spreadsheet of her absences." (Compl. at ¶¶ 20, 21, 22.)

21

At no point in her EEOC charge (Exhibits at pgs. 3-4 (Charge)), or subsequent June 26, 2019 letter to the EEOC (Exhibits pgs. 34-50 (McKinney Letter to EEOC)), did Ms. McKinney allege any of the above conduct that make up her hostile work environment claims. "Factual allegations made in formal litigation must correspond to those set forth in the administrative charge" for a Title VII suit to have exhausted administrative remedies. *Chacko,* 429 F.3d at 509; *see also Parker,* 915 F.3d. at 306 (dismissing a discriminatory termination claim "as it alleges a broader pattern of misconduct than is stated in the administrative charging document.")

Plaintiff therefore has failed to exhaust administrative remedies in Title VII for her hostile work environment claim because (1) it states a type of claim not previously included in her EEOC charge *and* (2) none of the facts alleged in support of Plaintiff's hostile work environment claim are included in the charge. Accordingly, Plaintiff's novel hostile work environment claim in Count 6 (compl. at ¶¶ 35-47) should be dismissed under 12(b)(6). *See Fort Bend*, 139 S. Ct. at 1852; *Chacko.,* 429 F.3d at 513.

B.  Plaintiff Cannot State a Hostile Work Environment Claim.

Even if Plaintiff had exhausted administrative remedies with respect to this claim, the Amended Complaint's allegations fail to rise to the level of a hostile work environment claim. To make out a hostile work environment claim under Title VII, a plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Baqir v. Principi,* 434 F.3d 733, 745-46 (4th Cir. 2006). Plaintiff's claim falls short on the third element. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the

22

conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). However, "[w]orkplaces are not always harmonious locales." *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315-16 (4th Cir. 2008). Moreover, federal employment statutes are not "general civility code[s]." *Oncale v. Sundower Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998).

A hostile work environment claim under Title VII must allege behavior that rises to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. *Harris*, 510 U.S. at 21; *see also Baqir,* 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23; *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996). Here, Plaintiff has alleged three instances of off-color remarks and a few work-related injustices that have nothing to do with plaintiff's sex (including logging her leave and clocking out of work). (Compl. ¶¶ 15, 20-22.) These allegations cannot form the basis of a hostile work environment claim under Title VII and should be dismissed under Rule 12(b)(6). *See e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted).

## VI. PLAINTIFF'S FMLA CLAIM IN COUNT 8 SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The Court should dismiss Count 8, Plaintiff's claim under the FMLA. (Compl. at ¶¶ 60-69, pg. 36-37), because Ms. McKinney was not eligible for FMLA leave when she made her rejected November 15, 2018 request and she had already exhausted all available leave. (Compl. at ¶ 41.) Plaintiff's FMLA claim is unclear. She alleges that the Board violated the FMLA "by terminating Plaintiff for complying with doctor's note and taking time off that *would have been* covered under the FMLA." (Compl. at ¶ 65, pg. 36 (emphasis added.).) The above statement is the Amended Complaint's only alleged violation of the FMLA and does not state a valid claim under that statute. There is no cause of action under the FMLA to protect leave that "would have been" covered under the FMLA. Either a leave request is covered or not, and, here, Ms. McKinney's November 15 leave request was indisputably not covered by the FMLA.

### A. Plaintiff Fails to State an Interference Claim under the FMLA.

In order to assert an interference claim under the FMLA, a plaintiff must allege "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Ainsworth v. Loudon County Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012). First, Ms. McKinney has not alleged that she made a claim for FMLA leave that was rejected. In fact, the Board granted all of Ms. McKinney's leave requests covered by the FMLA. The Board granted her first FMLA request in February 2018, allowing Ms. McKinney to take care of her mother. (Compl. at ¶ 20.) She made a second request for FMLA leave on May 21, 2018 related to her

24

high-risk pregnancy and, again, "her request was granted." (Compl. at ¶ 31.) Plaintiff does not allege that any other FMLA requests were made or denied.

Second, Ms. McKinney was not an eligible employee when she made the rejected November 15 leave request because she had not worked 1,250 hours in the preceding 12 months. 29 C.F.R. § 825.110(a)(2). As the Amended Complaint recounts, when Ms. McKinney applied for additional leave in September 2018, Ms. Wampler informed Ms. McKinney that she was "about 40 hours short on enough time to qualify for additional FMLA leave." (Compl. at ¶ 38; *see also*, Exhibits at pg. 24 (Wampler Memo) ("Ms. McKinney did not qualify due to not meeting the 1250 hours requirement"), at pg. 29 (FMLA Form).) Plaintiff does not contest Ms. Wampler's statement. The closest allegation is the conclusory allegation that "Plaintiff worked at least 1,250 hours during the 12 months *prior* to the *start* of FMLA leave." (Compl. at ¶ 65, pg. 36 (emphasis added).) Plaintiff only alleges two instances of FMLA leave in February and May 2018. (Compl. at ¶¶ 20, 31.) The allegation that she worked 1,250 hours before those instances of leave is not relevant to her November 2018 request. Plaintiff does not contest, however, Ms. Wampler's assertion that Ms. McKinney did not work sufficient hours in September when the Board granted her 12 weeks of additional, non-covered leave as a courtesy. She did not work any more hours by November 15 when she made, and the Board rejected, her leave request. (Compl. ¶¶ 38-43.) Consequently, Ms. McKinney was not eligible for FMLA when she made her November 15 leave request, the only request rejected by the Board. Ms. McKinney thus cannot sustain an interference claim because she cannot show the Board rejected FMLA leave to which she was legally entitled. *Ainsworth*, 851 F. Supp. 2d at 975.

B.  Plaintiff Fails to State a Retaliation Claim under the FMLA.

Plaintiff's FMLA retaliation claim should be dismissed because she has not plausibly alleged that she was dismissed due to an activity protected by the FMLA. In order to allege a retaliation claim, plaintiff must allege "that [s]he [1] engaged in protected activity, that [2] the employer took adverse action against [her], and that [3] the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Plaintiff fails to allege a causal connection between a "protected activity" and her dismissal.  As noted above, Plaintiff only alleges that the Board terminated her for "taking time off that *would* have been covered by FMLA."  (Compl. at ¶ 66 (emphasis added).) As this allegation readily recognizes, the Board did not fire Ms. McKinney for taking leave that *was* covered under the FMLA but only leave that "would have been" if Ms. McKinney was eligible for such leave at the time of her dismissal.  She was not (see above) and, thus, was not engaged in activity "protected" by the FMLA.  Because Ms. McKinney cannot state an interference or a retaliation claim under the FMLA, Count 8 should be dismissed under Rule 12(b)(6).

## VII.  PLAINTIFF'S CLAIM UNDER THE NCWHA IN COUNT 4 MUST BE DISMISSED.

Count Four of the Amended Complaint alleges two violations under the North Carolina Wage and Hour Act ("NCWHA"):  (1) for the lack of payment to plaintiff as a separated employee and (2) for violation of the minimum wage provision.  Neither claim is cognizable because the Court lacks jurisdiction over the Board for the separated employee claim and Plaintiff fails to state a minimum wage claim upon which relief could be granted.  The Court should therefore dismiss Count 4 (Compl. ¶¶ 20-24, pgs. 26-27) under Rules 12(b)(1) & 12(b)(6).

26

A.  <u>The Court lacks Subject Matter Jurisdiction over the Board for a Separated Employee Claim.</u>

Plaintiff alleges the Board violated NCWHA's provision in N.C.G.S § 95-25.7 by not providing full payment to her as a separated employee. (Compl. at ¶ 23, pgs. 26-27.) The NCWHA does not generally apply to Boards of Education except for specified provisions listed in N.C. Gen. Stat. § 95-25.14(d).  Section 95-25.7 is not one of the provisions that applies to the Board, thus, Plaintiff's claim under this section must be dismissed for lack of subject matter jurisdiction. *See* N.C.G.S. § 95-14(d) (exempting units of government from provisions of the Act).

B.  <u>Plaintiff Cannot State a Minimum Wage Claim.</u>

Plaintiff brings a second claim under the NCWHA for violation of the minimum wage in N.C.G.S. § 95.3 because she was not compensated "for time when she was required to perform 'off-the-clock' in travelling to required meetings and making bank deposits." (Compl. at ¶ 22, pg. 26.)  Plaintiff fails to state a minimum wage claim because her travel time is not compensable under the NCWHA as a matter of law. North Carolina interprets the NCWHA in accordance with federal law including the Portal to Portal Act. *See Whitehead v. Sparrow Enter., Inc.*, 167 N.C. App. 178, 189, 605 S.E.2d 234, 241 (2004) (applying the Portal to Portal Act to a claim under the NCWHA).  The Portal to Portal Act states that employers need not compensate their employees for (1) "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or (2) "activities which are preliminary to or postliminary to said principal activity or activities." 9 U.S.C.§ 254(a). In other words, employers are only required to compensate employees for travel time if travel is part of the "principal activity of the employee." *Whitehead,* 167 N.C.App. at 189.  Here, Plaintiff makes no allegation that her purported uncompensated travel was part of Ms. McKinney's "principal

activity" as a book keeper, thus, Plaintiff's minimum wage claim under the NCWHA fails as a matter of law. *Id.*

Further, even if Plaintiff has alleged a minimum wage claim under the NCWHA, such a claim is time-barred. Claims under the NCWHA have a limitations period of two years, N.C.G.S. § 95–25.22(f), that begins running as soon as a "promise is broken" and the "injured party is at liberty to sue." *Kornegay v. Aspen Asset Grp., LLC,* 204 N.C. App. 213, 233–34, 693 S.E.2d 723, 738 (2010) (internal quotations removed). It is unclear exactly when Ms. McKinney first traveled to a meeting or the bank after clocking-out, as alleged in paragraph 22 of the Amended Complaint. It appears, however, that those events occurred before February 22, 2018. On that date, according to paragraph 23 of the Amended Complaint, Ms. McKinney sent an email to Mr. Patrick "expressing her frustrations" with him and shared that email with Ms. Wampler. Presumably those frustrations included all events in the preceding paragraphs. That means the first instance of Ms. McKinney allegedly being unpaid for travel occurred more than two years before the filing on this action on March 12, 2020 and, thus, her minimum wage claim under the NCWHA is time-barred. *See* N.C.G.S. § 95–25.22(f).

## VIII. PLAINTIFF'S STATE LAW TORT CLAIMS AGAINST THE BOARD SHOULD BE DISMISSED.

Plaintiff's intentional and negligent infliction of emotion distress claims ("IIED" and "NIED," respectively)[7] in Counts 2 and 3 (compl. at ¶¶ 10-29, pgs. 24-26) should be dismissed

---

[7] As stated above, Plaintiff's wrongful discharge claim is also subject to dismissal based on the Board's governmental immunity.

based on the Board's governmental immunity.[8] Under North Carolina law, the doctrine of governmental immunity bars suits against "the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its [governmental] immunity from tort liability pursuant to statutory authority." *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 22–23, 348 S.E.2d 524, 526 (1986); *see also Hallman v. Charlotte-Mecklenburg Bd. of Educ.*, 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996) (same). N.C. Gen. Stat. § 115C-42 authorizes a local board of education to waive governmental immunity through the purchase of liability insurance. "N.C. Gen. Stat. § 115C-42 is the *exclusive* means of a local board of education to waive immunity." *Ripellino v. North Carolina Sch. Bds. Assoc.*, 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003) (citing *Lucas v. Swain County Bd. of Educ.*, 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002)) (emphasis added).

In this case, the Board has not waived its immunity by obtaining liability insurance pursuant to N.C. Gen. Stat. § 115C-42. Rather, the Board participates in the North Carolina School Boards Trust (NCSBT or "Trust"). (*See* Affidavits of Melody Coons and Dan Karpinski, Motion

---

[8] Plaintiff does not appear to bring either Count 2 or 3 against Ms. Wampler in her individual capacity. *See* Compl at ¶¶ 10-19, pgs. 24-25 (not identifying Ms. Wampler in the Counts). To the extent the Court interprets this as an oversight, these Counts should be dismissed as against Ms. Wampler. First, NIED cannot be brought against Ms. Wampler in her individual capacity because of public official immunity. *Webb ex rel. Bumgarner v. Nicholson*, 178 N.C. App. 362, 366-67, 634 N.C. App. 545, 548 (2006) (holding governmental immunity barred claim against principal from personal liability for negligence). As to IIED, the allegations concerning Ms. Wampler fail to rise to the level of "outrageous" conduct needed to sustain an IIED claim as North Carolina cases have found in other employment actions. *See, e.g., Thomas v. Northern Telecom, Inc.*, 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (granting employer's motion to dismiss plaintiff's IIED claim and Title VII claim, to the extent the claim is based on disability discrimination, on the grounds that employee's allegations that she was subjected to a hostile work environment and wrongfully terminated do not support an IIED claim).

29

to Dismiss Exhibits 1 and 2.) Plaintiffs' unsupported assertion that the Board has waived immunity is insufficient to establish jurisdiction where the Board has produced evidence to the contrary. *See Barrett v. Board of Educ. of Johnston County*, 13 F. Supp. 3d 502, 508 (E.D.N.C. 2014).

It is well-established that a local board of education does not waive governmental immunity by participating in the Trust. *See, e.g., Willett v. Chatham County Bd. of Educ.*, 176 N.C. App. 268, 269, 625 S.E.2d 900, 901-02 (2006); *Ripellino*, 158 N.C. App. at 428-29, 581 S.E.2d at 92-93; *Lucas*, 154 N.C. App. at 363, 573 S.E.2d at 542; *see also see also Barrett*, 13 F. Supp. 3d at 514 (holding that school board had not waived immunity defense where sole source of potential insurance coverage was through NCSBT, and therefore, court lacked jurisdiction to consider plaintiffs' tort claim). In this action it is likewise clear that the Board's participation in the Trust does not meet the requirements necessary to waive immunity under N.C. Gen. Stat. §115-42. The language of the Board's coverage agreement with the Trust expressly states that:

> The NCSBT Coverage Agreement is not a contract of insurance by a company or corporation duly licensed and authorized to execute insurance contracts in this State or by a qualified insurer as determined by the Department of Insurance. Therefore, the NCSBT Coverage Agreement expressly is not considered a waiver of governmental immunity as provided in G.S. 115C-42.

(*See* Exhibit A to Affidavit of Melody Coons at pg. 1.) Moreover, the Board's Chief Financial Officer, Dan Karpinski, has confirmed that the Board "has not purchased, or otherwise secured, any liability insurance coverage or risk protection for claims for errors and omissions or general liability other than that which it has by virtue of its participation in the [Trust]." (Affidavit of Dan Karpinski at ¶ 4.)

Even in circumstances where a board of education has waived its governmental immunity through the purchase of insurance, "such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. It

is well-settled that governmental entities, such as local boards of education, retain governmental immunity to the extent that exclusions from coverage exist. *See, e.g., Patrick v. Wake County Dept. of Soc. Servs.*, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008); *Herring*, 137 N.C. App. at 688-89, 529 S.E.2d at 464; *Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 99 N.C. App. 753, 755, 394 S.E.2d 242, 244 (1990) ("unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived by the Board or its agents"). In such cases, courts strictly construe exclusionary clauses against waiver of immunity. *Herring*, 137 N.C. App. at 689, 529 S.E.2d at 464; *Overcash*, 83 N.C. App. at 25-26, 348 S.E.2d at 527; *Beatty*, 99 N.C. App. at 756, 394 S.E.2d at 244-45. Thus, if a plaintiff asserts claims that are excluded from coverage under the governmental entity's policy, there is no waiver of immunity. *Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923 ("A governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] insurance policy.").

In this case, Plaintiffs' claims against the Board for Intentional and Negligent Infliction of Emotional Distress (Counts 2 and 3) are excluded by the NCSBT Coverage Agreement. (*See* Exhibit A to Affidavit of Melody Coons at pg. 9, Exclusion 28 (stating that coverage does not apply "[t]o any Claim for intentional infliction or negligent infliction of emotional distress").)[9] Because claims of IIED and NEID have been expressly excluded, the Board has not waived its immunity for these claims and the Court should dismiss Counts 2 and 3.[10]

---

[9] The reinsurance agreement, which applies to claims in excess of $150,000 and up to $1,000,000, also contains an exclusion for Intentional and Negligent Infliction of Emotional Distress. *See* Exhibit B to Affidavit of Melody Coons at pg. 6, exclusion ff. The reinsurance agreement also includes an exclusion for any claim or award for salary, which would exclude Plaintiff's wrongful discharge claims. *See id.* at page 4, exclusion t.

[10] In the alternative, the Board asserts that Plaintiff has failed to adequately allege outrageous conduct that could form the basis of a NIED or IIED claim against the Board or any subordinate for the reasons stated in Defendant Mark Patrick's Motion to Dismiss filed in this Action, Sections II and III.

31

## IX. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1983 IN COUNT 9 AGAINST THE BOARD OR MS. WAMPLER.

Section 1983 provides a remedy for violations of federally protected rights established by the United States Constitution or by another federal statute. *See Baker v. McCollan*, 443 U.S. 137. 145-46 (1979). Section 1983 does not create a separate cause of action. *Id.* Plaintiff's Section 1983 claims should be dismissed because they are redundant of her non-meritorious statutory claims and state wholly inadequate, conclusory constitutional violations without support in the alleged facts or the law. Further, with respect to the Board, Plaintiff fails to adequately identify any illegal policy, practice, or custom sufficient to state a Section 1983 claim against a governmental body. And, as against Ms. Wampler, Plaintiff fails to adequately allege a "clear" violation required to overcome Ms. Wampler's qualified immunity.

### A. Plaintiff Fails to Allege a Violation of Federal Statute or Constitution.

Plaintiff's alleged violations of Federal statutes are redundant and foreclosed. Plaintiff alleges defendants violated Federal statutes by terminating her and/or denying her leave request under Title VII (incorporating the Pregnancy Discrimination Act and the Lilly Ledbetter Act), the ADA, and the FMLA. *First*, as argued above, Plaintiff has not sufficiently alleged a violation of any of those statutes. *Second*, even if the Court finds a valid claim under one of more of those Federal statutes, "a [Section] 1983 action is foreclosed 'where the governing statute provides an exclusive remedy for violation of its terms.'" *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1367 (4th Cir. 1989). Plaintiff's allegations that Defendants violated Title VII, the ADA and the FMLA must be brought under the remedy offered by each statute (as she did) and her redundant Section 1983 claim should be dismissed. *See e.g., Sheaffer v. Cty. of Chatham*, 337 F. Supp. 2d

709, 720–21 (M.D.N.C. 2004) (dismissing Section 1983 claims under both the ADA and Title VII because those statutes provide exclusive remedies).

Plaintiff has also not alleged a valid Equal Protection claim because she fails to allege comparators or discrimination. To state an Equal Protection claim, a plaintiff must allege "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). For the first element, a plaintiff "cannot rely on a conclusory allegation that defendants treated [plaintiff] differently than persons similarly situated. Rather, they must allege facts sufficient to identify actual persons who were similarly situated but treated differently." *J.W. v. Johnston Cty. Bd. of Educ.*, 2012 WL 4425439, at *8 (E.D.N.C. Sept. 24, 2012). The second element requires factual allegations sufficient to show that any unequal treatment was done *intentionally or purposefully* to discriminate against the plaintiff. *See Morrison,* 239 F.3d at 654.

Here, Plaintiff only alleges that Defendants violated her "right to be free of discrimination on the basis of sex, related medical condition, or disability." (Compl. at ¶ 77.) To establish a violation of the Equal Protection Clause based on disability discrimination, Plaintiff must show that there was no rational basis for the state action that treated her differently because of her disability. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001); s*ee also, Wessel v. Glendening,* 306 F.3d 203, 210 (4th Cir. 2002) (The Supreme Court has held that the "[d]isabled are not a suspect or quasi-suspect class entitled to special protection under the Equal Protection Clause."). Here, Plaintiff has not alleged there was no rational basis for her dismissal, in fact, her allegations clearly support an "obvious alternate explanation" that she was terminated due to her excessive absences. *See supra* Section II.A.

33

Further, although sex discrimination does invite more scrutiny, Plaintiff has not alleged a valid Equal Protection claim here based on her sex because she fails to allege that "similarly-situated" male counterparts were granted leave. *J.W.*, 2012 WL 4425439, at *8. As explained, *supra* Section II.A.*,* none of Plaintiff's proffered comparators are similarly situated to Ms. McKinney because none were alleged to have been in poor standing or missed a comparable amount of work when the Board granted them additional leave. (Compl. at ¶ 48.) Further, the Amended Complaint lacks even a scintilla of allegations that any unequal treatment on the basis of sex (or even her disability) was done intentionally or purposefully to discriminate against the Plaintiff. *See Morrison,* 239 F.3d at 654.

Plaintiff's alleged due process violation is vague and speculative. In order to allege a violation of due process, Plaintiff must allege "(1) [she] had a property interest (2) of which the [Board] deprived [her] (3) without due process of law." *Phillips v. Gaston Cty.*, 2007 WL 922921, at *7 (W.D.N.C. Mar. 26, 2007) (citing *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 826 (4th Cir.1995)). *First*, Plaintiff has not sufficiently allege a deprived property right. Plaintiff only identifies a property interest in "employment/health benefits" that were deprived "without being afforded due process." (Compl. at ¶ 77, pg. 39.) It is unclear what exact benefits Plaintiff claims were deprived by Defendants. The only employment benefits mentioned in the Amended Complaint were those under the FMLA, and, as explained *supra* Section VI, the Board provided Plaintiff with all rights afforded to her by the FMLA. *Second*, even if some deprivation of property rights had occurred, Plaintiff cannot allege a lack of due process. Plaintiff had the statutory right to appeal any final administrative action that was an "alleged violation of a specified federal law" (including violations of the FMLA) to the Board for a hearing pursuant to N.C.G.S. § 115C-45(c). Plaintiff did not do so. Because Plaintiff

simply declined to use the provided due process, she has no cognizable Section 1983 for lack of due process. [11]

B. <u>Plaintiff's Section 1983 Claims Fail Against the Board Because She Fails to Allege an Official Policy or Custom that Caused a Deprivation of Rights</u>

A plaintiff seeking to impose liability on a Board of Education for the constitutional torts of its employees under § 1983 must "adequately plead and prove the existence of an official policy or custom that proximately caused a deprivation of rights." *Doe v. Putney and Charlotte Mecklenburg Bd. Of Educ.*, 2019 WL 3714459 *5 (W.D.N.C. June 5, 2019) (citing *Walker v. Prince George's Cnty*, 575 F.3d 426, 431 (4th Cir. 2009). The identification of a specific municipal policy or custom is a threshold requirement. *See Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Here, Plaintiff has not identified any Board policy, official or *de facto*, that violated her rights. Instead, Plaintiff nakedly asserts that the Board had an "official or *de facto* policy or custom of discriminating on account of an employee's sex or related medical conditions, denying reasonable accommodations to known or recognized disabilities, and/or improper administration or manipulation or deprivation of rights under the Family Medical Leave Act" and that it was "a *de facto* policy" of the Board to grant additional unpaid leave only to employees that had "additional leave time . . . that was not already exhausted." (Compl. at ¶¶ 48, 72, at pg. 38.) Further, Plaintiff alleges without any factual support that these offending policies were a "direct and foreseeable result of grossly inadequate supervision and training policies and practices" of the

---

[11] Plaintiff also alleges a violation of the Fourth Amendment (compl. at ¶ 71, pg. 37), which protects against "unreasonable searches and seizures." U.S. Const. Amend. 4. The Amended Complaint, however, does not allege that any defendant engaged in an unreasonable search or seizure

Board or the "ratification, condonation, approval or tolerance" of the Board. (Compl. at ¶ 80 at p.g 40.)

Despite the above conclusory allegations, the Amended Complaint fails to identify any official policy of the Board that violated her rights[12] and Plaintiff's conclusory attempts to manufacture a *de facto* Board policy fail because Plaintiff has not alleged that the Board or its subordinates have engaged in similar conduct in any other instance. The Fourth Circuit has repeatedly held that "isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes"; rather, "there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003); *see also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) ("[A] municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." (internal quotations marks omitted).) Plaintiff's allegations do not demonstrate "numerous particular instances of unconstitutional conduct." Quite the opposite. Plaintiff has only alleged *one* instance of in which a Board employee allegedly violated any statute or constitutional provision: the instant case. This isolated incident, fails to "approach the widespread and permanent practice necessary to establish municipal custom." *Carter*, 164 F.3d at 220; *see also, e.g. Jones v. Muskegon Cty.*, 625 F.3d 935, 946–47 (6th Cir. 2010) (finding that five separate alleged unconstitutional incidents did not establish a "custom that was so widespread, permanent, and well

---

[12] Plaintiff only mentions one official policy in her Amended Complaint: the Board's "excessive absences" policy. (Compl. at ¶ 46.) Plaintiff, however, does not allege that this policy violated Section 1983. All official Board policies are publicly available at http://www.clevelandcountyschools.org/board-of-education/policy-manual.

36

settled as to have the force of law." (internal quotation marks omitted).).  Accordingly, Plaintiff cannot bring a Section 1983 claim against the Board.[13]

C.  Plaintiff Fails to Allege Sufficient Facts to Overcome Ms. Wampler's Qualified Immunity under Section 1983.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231(2009).  In determining whether qualified immunity applies, courts must engage in a two-step test that asks first whether the defendant committed a constitutional violation and second whether the right violated was "clearly established." *Gregg v. Ham,* 678 F.3d 333, 338–39 (4th Cir. 2012).

Here, the gravamen of Plaintiff's Section 1983 claims was her termination and/or the denial of FMLA benefits.  Even if such claims were valid, which they are not for the reasons stated above, Ms. Wampler did not make any decision to terminate or deny any leave to Ms. McKinney; the Board did, as Plaintiff concedes.  (Compl. at ¶ 45 (the Board "voted to terminate [Ms.] McKinney's employment.") Ms. Wampler wrote a memorandum to the Board that outlined Ms. McKinney's absences and informed the Board that "to [her] knowledge, the only leave requests that have been submitted and approved by the board in the past, were requested for [the] full academic year and the employees were in good standing."  (Compl. at ¶ 42.)  Ms. McKinney asserts that this statement "implicitly invalidated Ms. McKinney's request." (*Id*.)  Even if true, such an implicit act cannot form conduct that is a "clear" violation of Ms. McKinney's rights to overcome qualified immunity

---

[13] The same reasoning applies in equal force to Plaintiff's claims against Ms. Wampler and Dr. Fisher in their official capacities.  Section 1983 claims brought against individuals in their official capacities is merely an alternative way of pleading against the government entity itself.  To the extent Section 1983 claims cannot state a claim against an entity, those same claims are sufficient to state a claim again individuals in their official capacities.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State")

and the Court should dismiss the Section 1983 claims against Ms. Wampler under Section 1983. *Gregg*, 678 F.3d at 338–39.

## X.   PLAINTIFF CANNOT SEEK PUNITIVE DAMAGES AGAINST MS. WAMPLER OR THE BOARD.

Plaintiff's punitive damages claim in Count 10 (compl. at ¶¶ 82-96, pgs. 41-42) is not available against Ms. Wampler or the Board because Plaintiff has not alleged a cognizable violation of any statute that authorizes such damages. Count 10 should be dismissed or, in the alternative, struck from the Amended Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  *See Shook v. Shook*, 2007 WL 2491327, *16 (W.D.N.C. 2007) (striking allegations seeking punitive damages).

Furthermore, the Board is immune from punitive damages claims for two reasons:  *First,* as a matter of law, a punitive damages claim cannot be brought against the Board. *See, e.g., Doe v. County of Centre, PA*, 242 F.3d 437, 457-58 (3rd Cir. 2001); *Liner v. Hospital Serv. Dist. No. 1 of Jefferson Parish*, 230 Fed. Appx. 361, 365 (5th Cir. 2007); *Teasdell v. Baltimore County Bd. of Educ.*, 2013 WL 4804736, *6 (D. Md. 2013).  *Second*, even if available against the Board, Plaintiff's punitive damages claims would be excluded by the NCSBT Coverage Agreement. (*See* Exhibit A to Affidavit of Melody Coons at pg. 9, Exclusion 21 (stating that coverage does not apply "[t]o any double, treble, punitive or liquidated damages").)

## CONCLUSION

For the reasons stated above, moving defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint and dismiss with prejudice all claims against them.

38

Respectfully submitted, this the 22nd day of May 2020.

/s/ Colin Shive
THARRINGTON SMITH, L.L.P.
Colin Shive
N.C. State Bar No. 43202
Kunal J. Choksi
N.C. State Bar No. 55666
209 Fayetteville Street
Post Office Box 1151
Raleigh, North Carolina   27602-1151
Telephone:  (919) 821-4711
Fax:  (919) 829-1583
E-mail: cshive@tharringtonsmith.com
*Attorneys for the Cleveland County Board of Education, Stephen Fisher and Jennifer Wampler*

39

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT** was electronically filed with the Clerk of the Court using CM/ECF and served on all counsel of record registered to receive notice of such filings.

This the 22nd of May, 2020

THARRINGTON SMITH, L.L.P.

/s/ Colin A. Shive
Colin A. Shive