UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-221-MOC-DSC

| WENDY MCKINNEY, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CLEVELAND COUNTY BOARD | ) | **ORDER** |
| OF EDUCATION, MARK PATRICK, | ) | |
| STEPHEN FISHER, JENNIFER | ) | |
| WAMPLER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant Mark Patrick, (Doc. No. 11), and on a Motion to Dismiss, filed by Defendants Cleveland County Board of Education, Stephen Fisher, and Jennifer Wampler, (Doc. No. 13).

### I. BACKGROUND

Plaintiff was employed by the Cleveland County Board of Education (the "Board") as a full-time employee in various roles beginning in January 2003. In 2015, she began working as a bookkeeper for North Shelby High School. (Doc. No. 1-4 at ¶¶ 1, 12: Am. Compl.). She was employed by the Board in this capacity until her termination on December 14, 2018. (Id. at ¶ 45). The Board informed Plaintiff that it was terminating her under its excessive absences policy.

Plaintiff filed this action in Gaston County Superior Court on March 17, 2020, naming the following persons and entities as Defendants: (1) Cleveland County Schools/Board of Education; (2) Mark Patrick, individually and in his official capacity as principal of North

1

Shelby School; (3) Stephen Fisher, in his official capacity as Cleveland County Schools Superintendent; and (4) Jennifer Wampler, individually and in her official capacity as Assistant Superintendent of Operational and Human Services, and Executive Director of Human Resources for the Cleveland County Schools. Defendants removed the case to this Court on April 15, 2020, based on federal question jurisdiction, under 28 U.S.C. § 1331.

The Court first notes that Plaintiff's Amended Complaint is 46 pages long—hardly a "short and plain statement" showing that Plaintiff is entitled to relief, as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. See (Doc. No. 1-4). Thus, the Court will not attempt to recite all of Plaintiff's factual allegations here and, instead, incorporates them by reference. The highlights of Plaintiff's factual allegations are as follows:

Plaintiff's allegations regarding her work environment began when Defendant Mark Patrick started as principal of North Shelby High School in August of 2017, the beginning of the 2017-18 school year. Plaintiff had recently returned to the school after "gastric sleeve" surgery and began to have "matters of conflict" with Patrick. For example, Patrick allegedly made remarks that made Plaintiff "uncomfortable," including saying (1) regarding seat belts on children, "you must make sure it goes directly across the nipples"; (2) that his "underwear was 'up his ass'"; and (3) that "I have to go pee" while walking through Plaintiff's office. Plaintiff allegedly reported these remarks to Defendant Fisher, the Superintendent of Cleveland County Schools. Plaintiff also states concerns with Patrick including what she perceived as his apparent disregard for bookkeeping practices and policies and perceived favoritism.

Plaintiff also alleges Patrick engaged in "disparate, rude, and condescending treatment" of her leave requests, including requiring her "to prepare an unofficial spreadsheet of her absences," delaying her requests, and sending a rude text message in response to one such

2

request. Plaintiff further alleges that Patrick instructed her "to clock out before driving to a mandatory meeting" and "to take school's banking deposits on her own time, after clocking out of work, on her way home."

Plaintiff states that she first reported the above conduct and other concerns to Defendant Wampler, Executive Director of Human Resources, beginning in November 2017. She claims she made additional reports to Wampler in a meeting on February 26, 2018. At the end of the 2017-18 school year, Plaintiff received a "negative [performance] evaluation." One of the areas on which she needed "improvement," according to the evaluation, was her "attendance." Plaintiff's performance evaluation, dated July 19, 2018, placed Plaintiff on "conditional" evaluation with an overall rating of "Need Improvement." According to Plaintiff, this was this first negative performance she had received in her years working for the Cleveland County schools.

Plaintiff had various personal issues during the 2017-18 school year for which she took leave or was otherwise absent from work. For example, in February of 2018, Plaintiff used leave under the Family Medical Leave Act (the "FMLA") to take care of her sick mother. The next month, Plaintiff missed additional time because of "severe arm pain." Plaintiff learned she was pregnant in April and by May a doctor had "written [Ms.] McKinney out of work." On May 21, 2018, Plaintiff applied for FMLA leave for her pregnancy, which was high-risk, and "[h]er FMLA request was granted." Plaintiff exhausted her FMLA leave on July 2, 2018. In total, Plaintiff missed 38.3 workdays not covered by the above FMLA requests during the 2017-18 school year according to her July performance evaluation.

Plaintiff asked Wampler about taking additional leave in September 2018. Wampler explained to Plaintiff that she was not eligible for additional FMLA leave at that time because

3

she had not worked 1,250 hours in the 12 months before her request. Nevertheless, as a courtesy, Wampler granted Plaintiff approximately 12 additional weeks of unpaid leave. When this leave was close to expiring, in November, Plaintiff requested that Wampler extend her courtesy leave for an additional four to six weeks. Ms. Wampler "stated she could not approve that" request and warned Plaintiff that she could be subject to dismissal due to the Board's "excessive absence policy."

Plaintiff nevertheless made a request by letter to the Board on November 15 to extend her courtesy leave to January 2, 2019, past her scheduled November 16 delivery date and back surgery on December 14. On November 20, 2018, Wampler wrote a memorandum to the Board enclosing Plaintiff's leave request. The memorandum provided the Board with background about Plaintiff's leave request, including Plaintiff's history of excessive absences. The Board rejected Plaintiff's request in closed session on November 26 and then voted to terminate Plaintiff on December 14. Plaintiff recites three alleged instances of the Board approving extensions of leave to other employees. First, "a male principal was given an extension because his wife was having a difficult pregnancy." Second, "a transportation employee was given leave shortly after being hired." Third, an employee "was given an extension to start a new business." Plaintiff also alleges "[s]everal other employees were granted leave for medical reasons."

Plaintiff's Amended Complaint brings the following ten "causes of actions" ("Counts") under state and federal law, alleging: (1) wrongful discharge against the Board under North Carolina law; (2) intentional infliction of emotional distress against the Board and Patrick in his official and individual capacities; (3) negligent infliction of emotional distress against the Board and Patrick in his official and individual capacities; (4) violations of the North Carolina Wage and Hour Act against the Board; (5) unlawful retaliation against the Board under three North

4

Carolina statutes—N.C. GEN. STAT. § 115C-335.5, N.C. GEN. STAT. § 168A-10; and N.C. GEN. STAT. § 126-85; (6) pregnancy discrimination and hostile work environment claims against the Board under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., ("Title VII"); (7) discrimination and failure to provide reasonable accommodations claims against the Board under the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; (8) claims against the Board under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; (9) various federal statutory and U.S. Constitutional claims against all Defendants under 42 U.S.C. § 1983; and (10) punitive damages for any claim that authorizes such damages against all Defendants.

On March 21, 2018 Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEPC") related to her termination. (Doc. No. 1-4 at p. 49). She alleged discrimination based on "sex" and "disability," and she stated as follows:

> I began employment with the above employer in August 2003. In April 2018, I learned that I was pregnant with a high-risk pregnancy. During my pregnancy, I experienced severe pain, which required two surgeries and developed into a disability, however, I was able to undergo the surgeries because I was pregnant. I was out of work from May 2018 to July 2018 on approved leave due to the pain caused by my pregnancy. I was written out of work again in September 2018 due to the recurring pain and not being able to get treated. I gave birth on November 16, 2018, and I was expected to return to work after delivery and recovery on or about January 8, 2019. On December 14, 2018, I was discharged for alleged absences while I was on maternity leave. I was on approved leave through all times which I was out of work throughout my pregnancy.
>
> I believe that I have been discriminated against and denied a reasonable accommodation in violation of the Americans with Disabilities Act of 1990, as amended. I also believe I have been discriminated against due to my pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.). The EEOC issued a "determination letter" on September 5, 2019, noting that Plaintiff alleged that Defendant denied her a reasonable accommodation and terminated her employment in violation of Title VII and the ADA, finding in part that the evidence supported Plaintiff's

5

allegations that Defendant terminated Plaintiff's employment without making an individualized assessment regarding the hardships associated with extending Plaintiff's leave, and "invit[ing] the parties to join with it in reaching a resolution to this matter." The parties could not reach a resolution, however, and Plaintiff brought this suit. Defendants thereafter filed the pending motions to dismiss. This matter is ripe for resolution.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption

of truth.  Iqbal, 556 U.S. at 678.  Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief.  Id. at 679.

### III. DISCUSSION

#### A. Official Capacity Claims Against the Individual Defendants

First, Plaintiff's official capacity claims against the individual Defendants are dismissed as redundant of Plaintiff's claims against the Board because "[s]uing a governmental employee in his 'official' capacity is simply another way of pleading an action against the governmental entity."  Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 399 (M.D.N.C. 2004) (dismissing official capacity claims against individual defendants where the governmental entity was also sued); see also Kentucky v. Graham, 473 U.S. 159, 165–66 (1985).

#### B. Plaintiff's Discrimination Claims Under Title VII, the ADA and State Law in Counts 1, 6, 7, and 8

Defendants contend that Plaintiff's discrimination claims under Title VII (pregnancy discrimination and hostile work environment), the ADA (discrimination and failure to accommodate), and the FMLA (interference and retaliation), and her state law wrongful discharge claim, should all be dismissed under Rule 12(b)(6) because her conclusory allegations of discrimination are insufficient to survive a motion to dismiss and the Amended Complaint and accompanying exhibits themselves demonstrate that Plaintiff was not discriminated against. Taking Plaintiff's allegations as true and are construing them in the light most favorable to her,

7

the Court will deny the motion to dismiss as to Plaintiff's Title VII, ADA, and FLMA claims.[1]
As to Plaintiff's hostile work environment claim under Title VII, however, this claim will be dismissed. Plaintiff failed to exhaust administrative remedies in Title VII for her hostile work environment claim because (1) it states a type of claim not previously included in her EEOC charge and (2) none of the facts alleged in support of Plaintiff's hostile work environment claim are included in the EEOC charge. For this reason, Plaintiff's hostile work environment claim is dismissed.[2]

Next, as to Plaintiff's claim against the Board for wrongful discharge in violation of the public policy of North Carolina, the Court finds that the Board enjoys governmental immunity from this claim, and the Board has not waived its immunity. Thus, the wrongful discharge claim

---

[1] To the extent Plaintiff purports to impose any liability on the individual Defendants as to the Title VII and ADA claims, it is well settled that there can be no individual liability under these statutes—the action is against the employer only. See Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (no individual liability under Title VII); J.W. v. Johnston Cty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012) (collecting cases holding that the ADA does not impose individual liability). The Court further notes that, although the Court agrees with Defendants that the FMLA claim for retaliation and interference teases plausibility, the Court will nevertheless allow Plaintiff to explore these claims through discovery, given the extremely lenient pleading standards of Iqbal and Twombly.

[2] Even if Plaintiff had exhausted administrative remedies with respect to this claim, the Amended Complaint's allegations do not state a cognizable Title VII claim based on hostile work environment. To state a hostile work environment claim under Title VII, a plaintiff must alleged that (1) she experienced unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. See Baqir v. Principi, 434 F.3d 733, 745–46 (4th Cir. 2006). Plaintiff's claim falls short on the third element. Here, Plaintiff has alleged several instances of off-color remarks and a few work-related injustices that have nothing to do with plaintiff's sex (including logging her leave and clocking out of work). These allegations are not enough to state a cognizable claim for a hostile work environment claim under Title VII. See e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment").

8

against the Board is dismissed.

C. Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress in Counts 2 and 3

Under North Carolina law, the elements of intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 488 (1986)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Id. at 490. "Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6)." Bonham v. Wolf Creek Acad., 767 F. Supp. 2d 558, 572 (W.D.N.C. 2011) (citing Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan, 79 N.C. App. at 491 (conduct was found to be extreme and outrageous when the defendant threatened the plaintiff with bodily injury and advanced on her with a knife after she refused his sexual advances). North Carolina "has set a high threshold for a finding that conduct meets [this] standard." Dobson v. Harris, 134 N.C. App. 573, 578 (1999), rev'd in part on other grounds, 352 N.C. 77 (2000). This standard "excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible." Walker v. Sullair Corp., Nos. 90–2124, 1991 WL 195754, at *3 (4th Cir. Oct. 3, 1991). "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Bonham, 767 F. Supp. 2d at 572 (quoting Briggs v. Rosenthal, 73

9

N.C. App. 672, 677 (1985)). Moreover, extreme and outrageous conduct involves serious actions, not mere words. See Guthrie v. Conroy, 152 N.C. App. 15, 23 (2002) (conduct was found to be extreme and outrageous when there was an unfair power relation between the defendant and plaintiff; and the defendant used explicit language towards the plaintiff, made sexual advances towards the plaintiff, made statements expressing desire to engage in sexual relations with the plaintiff, touched the plaintiff's genitals and touched the plaintiff with his genitals).

"[T]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Plaintiff fails to state a claim for negligent infliction of emotional distress or intentional infliction of emotional distress against Defendants, and these claims will therefore be dismissed.[3] First, as to Plaintiff's claim for intentional infliction of emotional distress, Plaintiff has failed to plead intent to harm by any of the named Defendants, and Defendants' alleged conduct simply does not rise to the level of extreme and outrageous as a matter of law. Next, as to the claim for negligent infliction of emotional distress, the North Carolina Workers' Compensation Act bars negligence actions against co-employees. Trivette v. Yount, 366 N.C. 303, 309 (2012). Plaintiff also failed to allege any facts supporting her conclusory allegation that she suffered severe

---

[3] Plaintiff does not address most of Defendants' arguments supporting the motion to dismiss her IIED and NIED claims in her response; she has, therefore, waived them. McLean v. Leonard, No. 5:14-CV-718-FL, 2015 WL 5725818, at *6 (E.D.N.C. Sept. 30, 2015) ("Plaintiff conceded these arguments by failing to address them in response to defendants' motion to dismiss.").

10

emotional distress. Causation and severe emotional distress are required elements of infliction of emotional distress causes of action. Buckner v. Gen. Signal Tech. Corp., 163 F. Supp. 2d 617, 627–28 (W.D.N.C. 2000).

In sum, for the reasons stated herein, the Court will dismiss Plaintiff's claims for intentional and negligence infliction of emotional distress against all of the named Defendants.

### D. Plaintiff's Claims under the North Carolina Wage and Hour Act in Count 4

Count Four of the Amended Complaint alleges two violations under the North Carolina Wage and Hour Act ("NCWHA"): (1) for the lack of payment to plaintiff as a separated employee and (2) for violation of the minimum wage provision. Neither claim is cognizable because the Court lacks jurisdiction over the Board for the separated employee claim and Plaintiff fails to state a minimum wage claim upon which relief could be granted.

First, Plaintiff alleges the Board violated NCWHA's provision in N.C. Gen. Stat. § 95-25.7 by not providing full payment to her as a separated employee. The NCWHA does not generally apply to Boards of Education except for specified provisions listed in N.C. GEN. STAT. § 95-25.14(d). Section 95-25.7 is not one of the provisions that applies to the Board, thus, Plaintiff's claim under this section must be dismissed for lack of subject matter jurisdiction. See N.C. GEN. STAT. § 95-14(d) (exempting units of government from provisions of the Act).

Plaintiff brings a second claim under the NCWHA for violation of the minimum wage in N.C. GEN. STAT. § 95.3 because she was not compensated "for time when she was required to perform 'off-the-clock' in travelling to required meetings and making bank deposits." (Doc. No. 1-4 at ¶ 22, pg. 26). Plaintiff fails to state a minimum wage claim because her travel time is not compensable under the NCWHA as a matter of law. North Carolina interprets the NCWHA in accordance with federal law, including the federal Portal to Portal Act. See Whitehead v.

11

Sparrow Enter., Inc., 167 N.C. App. 178, 189 (2004) (applying the Portal to Portal Act to a claim under the NCWHA). The Portal to Portal Act states that employers need not compensate their employees for (1) "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or (2) "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). In other words, employers are only required to compensate employees for travel time if travel is part of the "principal activity of the employee." Whitehead, 167 N.C. App. at 189. Here, Plaintiff makes no allegation that her purported uncompensated travel was part of Plaintiff's "principal activity" as a bookkeeper. Thus, Plaintiff's minimum wage claim under the NCWHA fails as a matter of law. Id.

Further, even if Plaintiff has alleged a minimum wage claim under the NCWHA, such a claim is time-barred. Claims under the NCWHA have a limitations period of two years, N.C. GEN. STAT. § 95–25.22(f), that begins running as soon as a "promise is broken" and the "injured party is at liberty to sue." Kornegay v. Aspen Asset Grp., LLC, 204 N.C. App. 213, 233–34 (2010) (internal quotations removed). It is unclear exactly when Plaintiff first traveled to a meeting or the bank after clocking-out, as alleged in paragraph 22 of the Amended Complaint. It appears, however, that those events occurred before February 22, 2018. On that date, according to paragraph 23 of the Amended Complaint, Plaintiff sent an email to Mr. Patrick "expressing her frustrations" with him and shared that email with Ms. Wampler. Presumably those frustrations included all events in the preceding paragraphs. That means the first instance of Plaintiff allegedly being unpaid for travel occurred more than two years before the filing on this action; thus, her minimum wage claim under the NCWHA is time-barred and is dismissed for this additional reason. See N.C. GEN. STAT. § 95–25.22(f).

### E. Plaintiff's State Law Retaliation Claims in Count 5

Next, as to Plaintiff's state law retaliation claims in Count 5, these claims will be dismissed for the following reasons.

First, N.C. GEN. STAT. § 115C-335.5 does not provide a private right of action, and Plaintiff has not challenged this in her response to the motion to dismiss.

Next, this Court does not have subject matter jurisdiction over Plaintiff's retaliation claim under N.C. GEN. STAT. § 168A-10. Section 168A-10 is a provision under the North Carolina Persons with Disabilities Protection Act ("NCPDPA"). There is no jurisdiction over a claim under the NCPDPA when, as here, a plaintiff also begins federal proceedings under the ADA. See N.C. GEN. STAT. § 168A-11(c) ("No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under… the Americans with Disabilities Act of 1990 . . . involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter."); see also Bowling v. Margaret R. Pardee Mem'l Hosp., 179 N.C. App. 815, 820–21 (2006) ("The clear meaning of the language of N.C. Gen. Stat. § 168A–11(c) does not allow a plaintiff to file simultaneous federal and state claims, then see which one has a better chance of being successful."). To the extent Plaintiff's claims of unlawful retaliation here are slightly different than the claims in Counts 6 and 7 of the Amended Complaint, Plaintiff is also time-barred from bringing this claim under the NCPDPA because she was terminated on December 14, 2018—more than 180 days from the date the original Complaint was filed in state court on March 17, 2020. See N.C. GEN. STAT. § 168A-12 (providing for a 180-days statute of limitations for any employment discrimination claim under the NCPDPA); Shea v. Vill. Green Care Ctr., Ltd., No. 5:97cv343-BR3, 1998 WL 960307, at *2 (E.D.N.C. Aug. 31, 1998) (applying this statute of

13

limitation to dismiss retaliation claim).

Finally, as to N.C. GEN. STAT. § 126-85, this section does not apply to Plaintiff because public school employees are not covered by the state Human Resources Act. N.C. GEN. STAT. § 126-5(c2) ("The provisions of this Chapter shall not apply to. . . public school employees."). In any event, this claim has a one-year statute of limitations. N.C. GEN. STAT. § 126-86. Plaintiff filed this action more than year after she was terminated on December 14, 2018.

### F. Plaintiff's "Section 1983" Claims in Count 9

Next, as to Plaintiff's purported "Section 1983" claims based on violations of various rights under various federal laws and the U.S. Constitution, Section 1983 of Title 42 of the United States Code imposes liability on persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. With respect to section 1983 claims, the Supreme Court has recognized that "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "A section 1983 action ... is not predicated on the legality or illegality of an act under state law, but on whether that act deprives an individual of 'rights, privileges, or immunities secured by the federal Constitution and laws.'" Clipper v. Takoma Park, Md., 876 F.2d 17, 19 (4th Cir. 1989) (quoting 42 U.S.C. § 1983).

The Court first finds that Plaintiff may not maintain a claim against any of the named Defendants under Section 1983 for violations of Title VII, the Lilly Ledbetter Act, the Pregnancy Discrimination Act, the ADA, or the FMLA. See Williams v. Pa. Human Relations Comm'n, 870 F.3d 294, 297–300 (3d Cir. 2017) ("We . . . in line with every circuit to address this issue, hold that plaintiffs may not seek damages under § 1983 for stand-alone violations of either Title

14

VII or the ADA."); Randle v. Historic Columbia Found., No. 3:05-2581-CMC-JRM, 2006 WL 2037488, at *4 (D.S.C. July 18, 2006) (dismissing plaintiff's Section 1985(3) claim seeking to redress violations of Title VII and ADEA because those statutes provided comprehensive remedies); see also Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1368 (4th Cir. 1989) (concluding the ADEA's comprehensive scheme barred § 1983 claim); Jones v. Richland Cty., No. CV 3:16-0466-MBS-KDW, 2016 WL 5402862, at *2 (D.S.C. Sept. 28, 2016) ("[T]he Lilly Ledbetter Act does not provide a substantive cause of action, but simply amends Title VII."); Bray v. Town of Wake Forest, No. 5:14-CV-276-FL, 2015 WL 1534515, at *5 (E.D.N.C. Apr. 6, 2015) ("[C]ourts analyze a PDA claim as a sex discrimination claim under Title VII."); McDavid v. Arthur, 437 F. Supp. 2d 425, 430 (D. Md. 2006) ("[T]o allow an ADA plaintiff to bring a claim based on the same conduct under § 1983 is counter to Congress's intent, because it effectively allows a plaintiff two bites at the apple."); Anderson v. Sch. Bd. of Gloucester Cty., Va., No. 3:18CV745, 2020 WL 2832475, at **21–22, 31 (E.D. Va. May 29, 2020) (finding that the plaintiff could not pursue ADA and FMLA claims through Section 1983); Henderson v. Gilbert, No. 06cv1284, 2006 WL 1966797, at *1 (D. Md. July 10, 2006) ("A plaintiff may not state a claim under 42 U.S.C. §§ 1983 and 1985(3) for rights created by the ADA"); Jolliffe v. Mitchell, 971 F. Supp. 1039, 1045 (W.D. Va. 1997) ("[T]he FMLA provides a comprehensive enforcement scheme which forecloses a § 1983 claim."). Plaintiff has also failed to state a cognizable federal constitutional claim under § 1983 against any of the named Defendants. Thus, to the extent that Plaintiff purports to bring a First Amendment, Equal Protection or other claim against any of the named Defendants, those claims are dismissed as well.

### G. Plaintiff's Claim for Punitive Damages in Count 10

Plaintiff's punitive damages claim in Count 10 is not available against any of the named

Defendants because Plaintiff has not alleged a cognizable violation of any statute that authorizes such damages.[4] Furthermore, as to the Defendant Board, the Board is immune from punitive damages claims for two reasons: First, as a matter of law, a punitive damages claim cannot be brought against the Board. See, e.g., Doe v. Cty. of Centre, PA, 242 F.3d 437, 457–58 (3rd Cir. 2001); Liner v. Hospital Serv. Dist. No. 1 of Jefferson Parish, 230 Fed. Appx. 361, 365 (5th Cir. 2007); Teasdell v. Baltimore Cty. Bd. of Educ., No. WDQ-13-0107, 2013 WL 4804736, at *6 (D. Md. Sept. 6, 2013). Second, even if available against the Board, Plaintiff's punitive damages claims would be excluded by the North Carolina School Boards Trust ("NCSBT") Coverage Agreement. See (Doc. No. 13-1 at p. 11: Ex. A to Coons Aff., Exclusion 21 (stating that coverage does not apply to double, treble, punitive damages, or liquidated damages)). Finally, as to the individual Defendants, Plaintiff has not alleged that any of the individual Defendants committed any actions with fraud, malice, or willful or wanton conduct. For all these reasons, the Court will dismiss Plaintiff's punitive damages claim.

## IV.   CONCLUSION

Defendants' motion to dismiss are denied in part and granted in part for the reasons stated herein.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss (Doc. Nos. 11, 13), are **DENIED** in part and **GRANTED** in part in accordance with this Order.

Signed: November 19, 2020

Max O. Cogburn Jr.
United States District Judge